# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KIM TYRONE JESSUP, ) ) Petitioner, pro se, ) ) ) ) v. ) ) SUPERINTENDENT R. DAVID ) MITCHELL, ) ) Respondent. ) | **ORDER, MEMORANDUM OPINION AND RECOMMENDATION** 1:08CV481 |

This matter is before the court on Respondent's motion for summary judgment (docket no. 8). Pro se Petitioner Kim Tyrone Jessup has filed a response, his own motion for summary judgment (docket no. 13), and two motions to expand the record (docket nos. 14, 15). These matters are ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge, and the motion must therefore be dealt with by way of recommendation. For the following reasons, it will be recommended that the court grant Respondent's motion for summary judgment and deny Petitioner's cross-motion for summary judgment. Petitioner's first motion to expand the record will be denied, but his second will be granted.

**I. Background**

Petitioner is a state court prisoner who, on March 15, 2006, in the Forsyth County Superior Court, was convicted following a jury trial of two counts of assault on a law enforcement officer with a firearm in cases 04CRS 028543 and -44. (Ex.

1.)[1] Petitioner was sentenced by Judge William Z. Wood, Jr. to two consecutive terms of 25 to 39 months of imprisonment. Petitioner was represented at trial by David Freedman. (*Id.*) The facts underlying Petitioner's conviction, as summarized by the North Carolina Court of Appeals on direct appeal, are as follows:

> The evidence presented at trial tended to show that on the morning of 2 January 2004, as part of an ongoing drug investigation, detectives with the Winston-Salem Police Department's drug interdiction team arrived at Defendant's house to execute a search warrant. Because the detectives had information that Defendant frequently carried a handgun, they used a "dynamic entry" to execute the warrant. First, Detective Renee Melly, in an "extremely loud" fashion, yelled, "police, search warrant," pounded three times on the front door, and announced the house's street address. Detective Melly repeated this procedure three times, and the detectives then waited fifteen to thirty seconds for a response from inside the house. Hearing nothing, Detective Steven Tollie "struck the door one time with [an] entry tool[,]" causing the door to completely open. The detectives paused a few seconds after opening the door, then Detectives T.D. Hill and J.P. Timberlake entered the residence behind a ballistic shield, a device which is intended to protect the detectives from gun fire. As they entered, they observed Defendant running down the house's staircase with his arm extended pointing a gun directly at them. In fear for their safety, Detective Hill fired two shots at Defendant and Detective Timberlake fired once. All three shots struck Defendant as he was halfway down the stairs. The detectives recovered Defendant's gun at the bottom of the staircase. After calling EMS for Defendant and securing the area, the detectives discovered 35.5 grams of crack cocaine and 44 grams of powdered cocaine in the house.

---

[1] Exhibit numbers correspond to exhibits attached to Respondent's brief in support of his motion for summary judgment (docket no. 9.)

-2-

Case 1:08-cv-00481-WO-WWD   Document 16   Filed 03/18/09   Page 2 of 20

*State v. Jessup*, No. COA06-1062, 2007 WL 1599119 (N.C. Ct. App. June 5, 2007), *rev. denied*, 361 N.C. 572, 651 S.E.2d 368 (Aug. 23, 2007) (unpublished). (Exs. 4, 5, 6.)

Following the unsuccessful direct appeal, Petitioner next filed a motion for appropriate relief in the Forsyth County Superior Court on March 5, 2008. It was denied on May 2, 2008. (Ex. 8.) He also unsuccessfully petitioned for a writ of certiorari from the North Carolina Court of Appeals. (Ex. 9.) The petition was denied on June 4, 2008. (Ex. 11.) Petitioner filed this federal habeas action on July 15, 2008.

## II. Petitioner's Claims

Petitioner asserts the following three federal habeas grounds for relief:

**GROUND ONE:** The trial court erred in its refusal to instruct the jury on the charge of assault with a deadly weapon as a lesser-included offense.

**Supporting facts:** Petitioner was shot three times by law enforcement officials after forced entry in Petitioner's home without announcing their presence or purpose. Petitioner heard no "knock and announce," thus, Petitioner took defensive measures for the protection of himself and his family. The intruders [that] entered into my home were not wearing traditional law enforcement attire and did not give any instructions or commands once forced entry was achieved.

**GROUND TWO:** Defendant's conviction was obtained as a direct result of ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:** Defense counsel did not obtain an affidavit from Petitioner to attach to the pre-trial motion to suppress. Moreover, defense counsel did not procure the testimony of the other occupants

of the residence who were present at the time of the forced entry into the residence. Defense counsel did not file a motion to sequester the State[']s witnesses and did not cross-examine the State's witnesses concerning conflicting statements provided to S.B.I. Agents.

**GROUND THREE:** Defendant's conviction was obtained as a result of an unconstitutional search and seizure in violation of the Fourth and Fourteenth Amendments to the U. S. Constitution.

**Supporting facts:** After Petitioner was shot in his own home by law enforcement officials, other occupants of the residence requested production of the search warrant and officials failed to produce a search warrant. Thus, it is logical to conclude that law enforcement officials broke into my home prior to the arrival of a search warrant.

## II. STANDARD OF REVIEW

### A. Summary Judgment

As noted, this matter is before the court on summary judgment. In a habeas case, "not . . . every set of allegations not on its face without merit entitles a . . . petitioner to an evidentiary hearing. As in civil cases generally, there exists a procedure whose purpose is to test whether facially adequate allegations have sufficient basis in fact to warrant plenary presentation of evidence. That procedure is, of course, the motion for summary judgment." *Blackledge v. Allison*, 431 U.S. 63, 80 (1977). Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence, or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

It is too glib, however, simply to say that the standard formulation for assessing summary judgment in the run-of-the-mill civil case applies in all habeas cases. For example, no habeas application by a state court prisoner may be "granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As another example,

in a habeas claim of ineffective assistance of counsel, a federal court "must indulge a strong presumption that counsel's conduct was reasonable, and . . . the petitioner must overcome the presumption that the challenged conduct may have been sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Nevertheless, the point is that habeas cases are subject to a summary judgment analysis as are all civil cases. *See* Rule 11, Rules Governing Section 2254 Cases In The United States District Courts; *see also Maynard v. Dixon*, 943 F.2d 407, 412-13 (4th Cir. 1991) (FED. R. CIV. P. 56 applies to habeas proceedings); *but cf.*, 17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4268, p. 485 (2d ed. 1988) ("The procedure of applications for habeas corpus for state prisoners is a confusing amalgam, to be found in a variety of different sources. There are a number of procedural provisions in the habeas corpus statutes themselves.").

**B. Section 2254**

Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2000). In addition, factual determinations made by a state court are afforded a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).

Section 2254 precludes *de novo* federal habeas corpus review of state court decisions on the merits of a petitioner's claim. *Bell v. Jarvis*, 236 F.3d 149,159-60 (4th Cir. 2000) (en banc) (overruling *Cardwell v. Greene*, 152 F.3d 331, 339 (4th Cir. 1998)). When faced with a state court decision that does not explicitly cite or apply federal law, the habeas court should conduct an "independent examination of the record and the clearly established Supreme Court law." *Bell,* 236 F.3d at 158. Nevertheless, the habeas court must still confine its review to whether the "result" of the state court decision "is legally or factually unreasonable." *Id.* at 163 (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases--indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the *result* of the state-court decision contradicts them." (first emphasis in original, second emphasis added)).

A state court decision is contrary to Supreme Court precedent if it arrives at a conclusion opposite that of the Supreme Court on a question of law or decides the case differently from Supreme Court precedent based on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is an unreasonable application of Supreme Court law "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id.* at 409. The "unreasonable application" standard does not admit of easy definition. For example, Justice O'Connor, writing for a majority of the

-7-

Court, has said that "[t]he term 'unreasonable' is no doubt difficult to define." *Williams*, 529 U.S. at 410. Nevertheless, more recently the Supreme Court has said that the

> unreasonable application prong of § 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced. In order for a federal court to find a state court's application of our precedent unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable.

*Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citations omitted); *see also Penry v. Johnson*, 532 U.S. 782, 793 (2001) (stating that even if the habeas court determines that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if the application was also objectively unreasonable); *Williams*, 529 U.S. at 410 (stating that an *unreasonable* application of federal law is different from an *incorrect* application of federal law).

Finally, even if the state court's adjudication is contrary to or an unreasonable application of Supreme Court precedent, a federal habeas court may not grant relief unless the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Penry*, 532 U.S. at 795 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). While the AEDPA standard is difficult to overcome, "[t]he standard is demanding but not insatiable . . . '[d]eference does not

-8-

Case 1:08-cv-00481-WO-WWD   Document 16   Filed 03/18/09   Page 8 of 20

by definition preclude relief.'" *Miller-El v. Dretke* ("*Miller-El II*"), 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell* ("*Miller-El I*"), 537 U.S. 322, 340 (2003)). These standards will guide the analysis below.

**IV. Analysis**

Petitioner's first claim for relief alleges that he was entitled to a lesser-included offense instruction for assault with a deadly weapon because he did not know that the persons entering his house were police officers. This issue was raised and addressed as a part of Petitioner's direct appeal. The North Carolina Court of Appeals stated:

> The elements of the offense of assault with a firearm on a law enforcement officer are: (1) an assault; (2) with a firearm; (3) on a law enforcement officer; (4) while the officer is engaged in the performance of his or her duties. N.C. Gen. Stat. § 14-34.5(a) (2003); *State v. Dickens*, 162 N.C. App. 632, 592 S.E.2d 567 (2004). Additionally, to be guilty of the offense, "the defendant must have known or had reasonable grounds to know that the victim was a law enforcement officer." *Dickens*, 162 N.C. App. at 636, 592 S.E.2d at 571 (citing *State v. Avery*, 315 N.C. 1, 337 S.E.2d 786 (1985)).
>
> The elements of the offense of assault with a deadly weapon are: (1) an assault of a person; (2) with a deadly weapon. N.C. Gen. Stat. § 14-33(c)(1) (2003). Assault with a deadly weapon is a lesser included offense of assault with a firearm on a law enforcement officer. *Avery*, 315 N.C. 1, 337 S.E.2d 786.
>
> "A defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support it." *State v. Richmond*, 347 N.C. 412, 431, 495 S.E.2d 677, 687 (citing *State v. Brown*, 300 N.C. 731, 268 S.E.2d 201 (1980)), *cert. denied*, 525 U.S. 843, 142 L.Ed.2d 88 (1998). " 'The sole factor determining the judge's obligation to give such an instruction is the presence, or absence, of any evidence in the record which might convince a rational trier of fact

to convict the defendant of a less grievous offense.'" *Richmond*, 347 N.C. at 431, 495 S.E.2d at 687 (quoting *State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981)). "The trial court is not, however, obligated to give a lesser included instruction if there is 'no evidence giving rise to a reasonable inference to dispute the State's contention.'" *State v. Hamilton*, 132 N.C. App. 316, 321, 512 S.E.2d 80, 84 (1999)(quoting *State v. McKinnon*, 306 N.C. 288, 301, 293 S.E.2d 118, 127 (1982)).

In this case, Defendant contends there was evidence that permitted a finding that he did not know the detectives were police officers. In support of this contention, Defendant points to his testimony that on the morning of 2 January 2004, after having slept for more than seven hours, he was "awoken by a crash at the door[ ]" that woke him "up out of the dead of sleep." Defendant testified that the crash "scared" him and that he "thought maybe it was a home invasion or . . . some burglars coming through the door[.]"

In light of all the evidence, however, we are not convinced that a rational juror could have convicted Defendant of the lesser included offense since the evidence shows that Defendant knew or had reasonable grounds to know that Detectives Hill and Timberlake were police officers. Although Defendant first testified that he was awoken by "a crash[,]" he later testified that he heard "two thumps[.]" The detectives testified that prior to entering the house, they "loud[ly]" knocked and announced their presence three times from the house's front porch. The officers entered the house behind a ballistic shield marked like "a big billboard that says police[.]" Defendant testified that "as [he] was making [his] way down the stairs," he saw figures coming through the door that "looked like some kind of police force, some kind of SWAT." Defendant's testimony that he did not hear the "knock and announce" and that he thought his house was being burglarized does not give rise to a reasonable inference to dispute the State's contention that Defendant knew the detectives were police officers, especially in light of Defendant's own testimony that the figures he saw coming into his house "looked like some kind of police force [.]" Defendant's assignment of error is overruled.

*Jessup*, 2007 WL 1599119, *1-2.

Petitioner has failed to show that the disposition on direct appeal is either contrary to or an unreasonable application of Supreme Court precedent. The United States Supreme Court has clearly held that state law error may not be corrected on federal habeas as long as it does not violate federal constitutional law. *Williams v. Taylor*, 529 U.S. 362 (2000) (federal habeas relief under the AEDPA amendments is only available when the state court adjudication was contrary to or an unreasonable application of clearly established Supreme Court law); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Cooper v. Taylor*, 103 F.3d 366, 370 (4th Cir. 1996) (en banc) (stating that federal habeas review is limited to "violations of the United States Constitution or its laws and treaties"); *Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995) ("[B]asic principles of federalism permit us to review only those state-court decisions that implicate federal constitutional rights.").

Moreover, the United States Supreme Court has dealt with instructions on lesser included offenses primarily in capital cases only. *See, e.g., Beck v. Alabama*, 447 U.S. 625 (1980). In *Beck*, the Court noted that it has "never held that a defendant is entitled to a lesser included offense instruction as a matter of due process . . . ." *Id.* at 637. The Court said that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [a state] is constitutionally prohibited from withdrawing that option from the jury *in a capital case.*" *Id.* at 638 (emphasis added). Under the reasoning in *Beck*, therefore, Petitioner was not entitled

-11-

to a lesser included offense instruction *as a matter of constitutional law* simply because the evidence supported an instruction. He certainly was not entitled to one otherwise. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982) (lesser included offense instruction required only when evidence warrants such an instruction).

The fact that Petitioner's claim is not a federal constitutional claim means that the question of whether or not an instruction was proper is a matter of state law. Because federal habeas relief is generally not available for errors of state law, the circumstances that would induce a federal habeas court to overturn the state court determination would need to be extraordinary. *Bates v. Lee*, 308 F.3d 411 (4th Cir. 2002). A federal habeas court, therefore, would only look at whether the state courts' finding that there was insufficient evidence to support a requested instruction "was so wrong as to amount to a miscarriage of justice." *Id.* Given the facts of this case, as outlined by the North Carolina Court of Appeals, even as a principle of state law, Petitioner has not shown that he was entitled to an instruction on the lesser included offense of assault with a deadly weapon. In no way was the state courts' denial of Petitioner's jury instruction claim contrary to or an unreasonable application of established Supreme Court precedent. His first claim for relief should be denied.

Petitioner's next claim for relief is a multifaceted claim of ineffective assistance of counsel. He alleges that his attorney failed to: (1) properly support a pretrial motion to suppress with an affidavit from Petitioner, (2) have others in the residence at the time the police entered testify at trial, (3) file a motion to sequester the State's

witnesses, and (4) cross-examine the State's witnesses about prior statements they gave to the S.B.I.

As Respondent correctly points out, Petitioner utterly failed to raise any of these claims in the state courts, but instead raises them for the first time in this court. This renders his claims both nonexhausted and procedurally barred. The concepts of procedural bar and exhaustion are closely related. As a general rule, a federal court may grant a writ of habeas corpus to a petitioner in state custody only if the petitioner has exhausted available state court remedies. 28 U.S.C. § 2254 (b)(1); *Longworth v. Ozmint*, 377 F.3d 437, 447 (4th Cir. 2004). "In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). "To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court." *Matthews*, 105 F.3d at 911. In presenting a claim to the state court, the petitioner must "fairly present" the federal issue for resolution by the state court. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000). "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." *Breard*, 134 F.3d at 619; *see also Baldwin v. Reese*, 541 U.S. 27, 31-32 (2004) (describing "fair presentation" as indicating "the federal law basis for [the litigant's]

-13-

Case 1:08-cv-00481-WO-WWD   Document 16   Filed 03/18/09   Page 13 of 20

claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'").

> A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default. If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim.

*Id.* at 619.

A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *see also McNeill v. Polk*, 476 F.3d 206 (4th Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 1138 (2008). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, a federal habeas court is precluded from reviewing the merits of a defaulted claim. A state has an interest in its rules and procedures and in the finality of its judgments, which "would be undermined if the federal courts were free to ignore procedural forfeitures in state court." *Reed v. Ross*, 468 U.S. 1, 10 (1984). A state procedural rule is considered "adequate if it is regularly or consistently applied by the state court, . . . and it is independent if it does not depend on a federal

-14-

constitutional ruling." *McNeill*, 476 F.3d at 211(citing *Johnson v. Mississippi*, 486 U.S. 578 (1988), and *Ake v. Oklahoma*, 470 U.S. 68 (1985)).

A petitioner may overcome both the procedural default bar and the exhaustion bar by showing cause for the default and actual prejudice resulting from the asserted constitutional error. *Coleman*, 501 U.S. at 750; *see also Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001). To demonstrate "cause," a petitioner may make "a showing that the factual or legal basis for the claim was not reasonably available to counsel." *McCarver v. Lee*, 221 F.3d 583, 591 (4th Cir. 2000) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 592 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

A habeas court also may review an otherwise procedurally defaulted claim if the petitioner can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *see also McCarver*, 221 F.3d at 588. The "fundamental miscarriage of justice" exception applies only to a narrow class of cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 392-94 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 494-96 (1986)). Therefore, in order to establish a

-15-

Case 1:08-cv-00481-WO-WWD   Document 16   Filed 03/18/09   Page 15 of 20

"fundamental miscarriage of justice," a petitioner must show actual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 346-47 (1992); *see also Smith v. Dixon*, 14 F.3d 956, 974 (4th Cir. 1994). Moreover, the "actual innocence" exception has been limited by the Fourth Circuit Court of Appeals to apply only in capital cases or cases where the alleged error results in the application of recidivist enhancements. *United States v. Mikalajunas*, 186 F.3d 490, 494-95 (4th Cir. 1999). In *Dretke*, however, the Supreme Court called into doubt the extension of the actual innocence exception beyond capital cases. 541 U.S. 386 at 392-94.

Petitioner failed to present his ineffective assistance of counsel claims to any North Carolina court. Therefore, they are nonexhausted.[2] Not only this, they are also procedurally barred because, if he returned to the state courts to present them, they would be procedurally barred under North Carolina law. N.C. GEN. STAT. §15A- 1419(a)(1), (a)(3), and (b). Petitioner fails to argue cause or prejudice or show actual innocence. Although he does generally claim to be innocent, there was ample evidence of his guilt, as was set out in the North Carolina Court of Appeals' opinion cited previously. Petitioner cannot show "'by clear and convincing evidence

---

[2] Petitioner's second motion to expand the record (docket no. 15) seeks to add documents showing further attempts at raising arguments in state court. Attached to it are documents that Petitioner sought to file in the state courts. He was not successful in doing so, apparently because he did not file them properly or sought review which was not allowed. Petitioner's motion will be granted to allow the record of his attempts to exhaust his claim to be complete. Nevertheless, the addition of the documents does not affect the ultimate decision that he has not exhausted the ineffective assistance allegations made in his second claim for relief. Just as Petitioner did not raise those claims in the portions of the record submitted by Respondent, he did not include them in the documents attached to his motion to expand the record. Even Petitioner's own documents show that he neither exhausted, nor attempted to exhaust, the ineffective assistance claims he raises now.

-16-

that, but for a constitutional error, no reasonable juror would have found'" him guilty. *Dretke*, 541 U.S. at 393 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)). If the concept of actual innocence applies to non-capital cases, this is the standard that would apply. Petitioner cannot hope to meet this standard in the present case. His ineffective assistance of counsel claims should be denied for being procedurally defaulted.

Petitioner's third and final claim for relief protests that his conviction was the result of an illegal search and seizure. He contends that the police who forcibly entered his house did not possess a valid warrant at the time they entered. He bases this belief on an allegation that others present in the house asked for a warrant just after he was shot, but were not immediately given one. One officer stated that it was in the car. Petitioner reasons that officers must have entered his home "prior to the arrival of the search warrant." (docket no. 2 at 18.) He then goes further and concludes, without much explanation, that this violation of his rights entitles him to habeas relief in the form of a new trial (*id.* at 18-19).

Petitioner's third claim fails for multiple reasons. First, because Petitioner had a full and fair opportunity to litigate the claim in the state court, federal habeas review is barred. *See Stone v. Powell*, 428 U.S. 465, 481-82 (1976); *see also Wright v. West*, 505 U.S. 277, 293 (1992) ("We have also held . . . that claims under *Mapp* [evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the state courts have provided a full and fair opportunity to litigate

them at trial or on direct review."); *Mueller v. Angelone*, 181 F.3d 557, 570 n. 8 (4th Cir. 1999) (acknowledging *Stone v. Powell* rule that federal habeas courts decline to review state court Fourth Amendment determinations); *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) ("*Stone v. Powell* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court.").

Petitioner did have a full and fair opportunity to litigate his claim in state court. Petitioner originally faced both the charges challenged in his current habeas petition and drug trafficking charges. He went to trial on all of the charges and was convicted on the drug trafficking charges. The jury could not reach a verdict on the assault charges, and they were later retried in this case. Prior to his first trial on all of the charges, Petitioner unsuccessfully challenged the propriety of the search warrant. Although it does not appear he challenged its very existence, as opposed to whether it was supported by probable cause, a warrant must exist in order to be evaluated for probable cause. Not only did the warrant in this case obviously exist, but its validity was upheld by both the trial court and the North Carolina Court of Appeals. *State v. Jessup*, No. COA05-1329, 2006 WL 1677871 (June 20, 2006). At the beginning of Petitioner's retrial on the assault charges, his attorney noted that the denial of the motion to suppress was then pending for appellate review. He raised the issue in the assault trial for preservation purposes (docket no. 10 at 5-7).

-18-

Case 1:08-cv-00481-WO-WWD   Document 16   Filed 03/18/09   Page 18 of 20

In the end, Petitioner had his opportunity to litigate any issues that he had with the search warrants; he simply lost. Under *Stone*, this court cannot now review the issue.

If the court did review the issues, Petitioner still could not prevail. Again, the search warrant clearly existed. In fact, there was testimony that it did, with the warrant being introduced as an exhibit at trial (*id.* at 36-38). Further, even if the warrant was somehow invalid, Petitioner would not be entitled to any relief. Whether police entered his home pursuant to a valid warrant or not, he could not legally point a weapon at them. A person cannot assault law enforcement officers even if the basis for the officer's actions is unconstitutional. Not only this, but an illegal response by a suspect, including aiming a firearm at police, constitutes a new and distinct crime that allows for the person's arrest. *United States v. Sprinkle*, 106 F.3d 613, 619 n.4 (4th Cir. 1997). Petitioner's arrest and conviction were proper for this reason alone.[3] His third claim for relief fails and should be denied.

For the foregoing reasons, **IT IS ORDERED** that Petitioner's motion to expand the record (docket no. 14) is **DENIED** and his motion to expand the record (docket no. 15) is **GRANTED**.

**IT IS RECOMMENDED** that Respondent's motion for summary judgment (docket no. 8) be **GRANTED**, that Petitioner's cross motion for summary judgment

---

[3]Petitioner's first motion to expand the record (docket no. 14) seeks to have Respondent produce a copy of the search warrant. Because the warrant is irrelevant to the case, the motion will be denied.

-19-

(docket no. 13) be **DENIED**, that the petition be **DENIED**, and this action be dismissed with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, N.C.
March 18, 2009